Mr. Ferencz. May it please the court. Stanley Ferencz for the appellants. In this appeal of the District Court's denial of our motion for a preliminary injunction in joining the appellee, we present two primary arguments. First, the District Court abused its discretion when it applied the wrong legal standard for evaluating whether Easlick was likely to succeed in proving design patent infringement. This Court's case law instructs that to evaluate infringement, the District Court must consider the overall design of the accused product and the patented design. The District Court based its decision that Easlick was unlikely to succeed in proving infringement on three minor details where the designs differed. And the District Court never actually issued any finding regarding the similarity or difference in the overall design. Mr. Easlick, I'm sorry to interrupt your thought. Have these patents expired or are they about to expire? No. When does it expire, do you know? Next year? The patent was issued in 2013. All right. I thought somewhere in the briefs they said it was given a term so that it would expire. But anyway, leaving that aside, the P.I. issued two years ago. What's gone on with the case since then? This is originally brought against 67 defendants. The case has been resolved against all of the other defendants. The case is sort of stalled with respect to this defendant because the question of infringement and so it hasn't gone to trial. No. Are you still working towards trial? Has there been discovery and so forth? It's essentially stalled. The medical has stalled pending the decision on appeal. Okay. Because of the impact that the infringement analysis that's the subject of this appeal will have on the rest of the case on remand. Okay. So functionality is part of claim construction. And why isn't the 90 degree offset functional? Well, the district court found that it was ornamental, Your Honor. Well, it's a no-go review if it's claim construction, right? Yes, it is. And if you look, the way the district court did the functionality analysis is you need the two hooks and the bottom hook has to support the top hook on the closet rod. Okay? And there are any variety of hook positions that will support on the leather hook that will support the purse or the tote. But it's functional in the sense that you can accommodate many more bags on the rack if it's at a 90 degree angle than if it's not. Your Honor, you could make an argument that anything is functional. Answer my question. Is that not the case? Nobody is contesting that. No, you're not answering my question. Answer my question. Is it not the case that you can accommodate many more bags on the rack if you turn it at a 90 degree angle? The number of bags that you can accommodate is going to be dictated by the size of the hook itself. Answer my question. I don't believe it is, Your Honor. Because it's the size of the hook that dictates the number of bags that can be placed on the hook. It's not a question of the number of bags on the hook. If you're talking about a single bag on each hook, the way pictures that you include in the joint appendix show the bags narrowly occupying space next to each other. But if you turn the hook so that it's not 90 degree angle, the bags would face outward and occupy a lot more space, no? The bags would occupy more space. Some people would say that that is beneficial because you can more easily see what the bag is. Isn't that functional as well, if it allows you to see what the bag is? That's not ornamental. That's functional as well, is it not? That's a hypothetical that is not in this lawsuit. No, but if you turn the hook one way, you can see the bags. If you turn it the other way, you can store more bags. So either orientation is functional. We believe either the orientation that Jackie Eastwood chose here is ornamental, Your Honor, which is a hypothetical. No, I understand that, but it has a functional consequence, which I thought you just admitted, that you can store more bags. I believe your question was, if the hook was not rotated 90 degrees, you could store more bags. Correct. Yes, and you agree, right? No, I said that it would take up more space. Okay, because it's the diameter of the radius of the hook. If you didn't turn the hook 90 degrees, each bag would take up more space, correct? You would be seeing... Yes, no. The bag would take up the same space, but you would be seeing it face on. In terms of accommodating the number of bags on the rack, if they're turned 90 degrees, you can, within a certain space on the rack, you can include more bags if it's turned at 90 degrees than if it's not, right? I think that's a question of math, Your Honor. Can I just press it further? There was a little discussion of this in the briefs, because your friends obviously raised this as an issue. Did the district court, was this question raised, or were these arguments made before the district court upon this issue? The functionality of this was not raised by the appellee at the district court, and the district court specifically held, and this is in the appendix, page 10. The design patent, however, still protects the ornamental features of the tow hanger's top and bottom hooks, which include, among other non-functional features, the shape of the hooks, the flare-out of the hook's tip, the 90-degree offset of the top and bottom hooks, and the spears on each end of the hook. So the district court identified these non-functional features and the ornamental features, and yet in its discussion only addressed three of them. It said there are these three differences, the shape of the hook, the flare-out of the top hook's tip, and the spears on the ends of each tip, and therefore they are not substantially similar. The district court never evaluated the overall similarity, saying you have these differences, you have these similarities. It's like two people are arguing over whether a car is similar. Somebody says they're dissimilar because the rear-view mirror is different. One takes two gallons more gas than the other, and the colors are different. Somebody, you would immediately recognize that there are lots of potential differences, and without any context or evaluation to the similarities, you can't make the decision on whether they're substantially similar. Conversely, somebody could argue a car is similar. Two cars are similar because each car has four wheels, an engine, and mirrors. You have to discuss both the dissimilarities and the similarities in order to decide whether they are substantially similar. What the district court did here, picking up on the discussion in the appellee's brief before the district court, was focus on the dissimilarities. A court can address the dissimilarities, but they also have to do that in the context of discussing the overall similarity. If we were to hypothetically say that the 90-degree angle is functional, you have an argument as to why there's infringement? Your brief focuses particularly on the 90-degree angle as being an ornamental feature, but let's hypothetically take that out of the case. Well, if you look at the prior art, which the district court also did not do, nothing in the prior art shows the 90-degree offset. No, no, no. I'm taking the 90 degrees out of the case. And I know you don't want to, you know, like the hypothetical, but I'm hypothetically saying we were to conclude it's functional. From the point of view of an ordinary observer, did the district court make a mistake to take the 90-degree angle out of it? There is evidence before the district court showing that there is. Just answer the question, then you can explain. I'm trying to answer the question, Your Honor. To some extent you're trying not to answer. There is evidence that there is actual confusion in the marketplace. What's the evidence of that? The evidence was an unrebutted declaration from Jackie Eastlake, which is based upon her discussions with potential customers. She's gotten complaints about other product that was not hers when folks thought it was hers. So there is unrebutted evidence that there's actual confusion. And that also goes to the second point, the irreparable harm. Okay, but you're still not answering my question. Take out the 90-degree angle. Would the district court's conclusion be correct or not correct? We think the district court's conclusion was correct, that the 90-degree offset is an ornamental feature. You are simply not answering my question. You come here. We ask you to answer the questions. You have to answer the question. You have to accept my hypothetical. You don't like it, but you've got to accept it. We take out the 90-degree angle. Is there anything wrong with the district court's conclusion that an ordinary observer would not see these as being different? I could see it both ways, Your Honor. The district court did not discuss the 90-degree angle in the context of the substantial similarity.  So the rest of your time for rebuttal? Yes. Okay. Mr. Duffey? May it please the Court. Timothy Duffey for Appalachian Accents, U.S. Our position is, obviously, that the plaintiffs failed to demonstrate a likelihood of success on the merits, and therefore the district court did not abuse its discretion in denying a preliminary injunction. And it hasn't come up yet, but obviously this was a denial of a preliminary injunction. No one's entitled to that as a matter of right. But I thought you were arguing one of your arguments in your brief with respect to irreparable harm, I guess, was that you made $500 off of these, and now you're not marketing them or using them. So what does it matter? Why are you here on a preliminary injunction if you're not marketing these products, and you don't plan on marketing these products? It is true that the temporary restraining order that was in effect for about two months or so effectively took my client out of the business. But now we're here because they appealed. I may have this confused with another case, but I thought there was a representation here that you're no longer engaged in marketing these products. We don't, but affirming the district court's decision is very helpful to us in the case, and obviously reversing it would be bad as well because then we're going to market them in the future. Obviously they might. I don't know one way or the other. But the point is that if we – if the case goes back, affirmed, then it continues with the district court's finding, at least on the preliminary injunction stage, it's quite favorable to us. That could totally get reversed if this Court engages in the claim analysis. Do you foresee litigating the merits of this past the preliminary injunction stage? No, because I think we're going to win. But if we didn't, if this were reversed – No, but if it's not a preliminary injunction, does that – that doesn't – technically it doesn't end the case. No, right, right. No, there's still the issue of whether there was – even assuming there was infringement, was there damages? And that's something we'd have to fight about, yeah. And when does the patent expire? You know, to be honest with you, I do not know the length of the time on the patent. Sorry. On the functionality question that Judge Dykstra was pressing your friend on, did you preserve that before the district court? Because I think you cite some pages in red, and I think Gray comes back and says, and I confirm that that doesn't say anything about it in my reading, so. We told the district court that the plaintiff could not have a design patent that protects every kind of offset hook or even 90-degree hook. Did we phrase that argument in terms of the functionality analysis? It might not have said that, that argument, or in the briefs. This was all done on a very quick record. But the district court did take the time to write the opinion and went through the law very carefully and did the proper analysis, we think, although we also maintain that he missed one of the functional elements, namely the 90-degree. Well, the question is that he missed it because you didn't raise it clearly enough. Do you have an appendix cite to where you said you raised it in passing and you discussed it? Is that in the record? I can only point you to the transcript of the argument, and I can get that page. I don't have it at the top of my head. But if Your Honor has already looked for that reference, no. Well, I looked at the pages you cited in red, and I didn't see it. Okay. Then our argument was what it was. The question before this Court is whether the court, whether the district court conducted the proper inquiry, and then whether it abused its discretion. And I think it's very clear. The district court went through the case file, followed it to a T, and then actually concluded, and this is on page 14 of the appendix, which is his ruling, that overall these are not similar. And so that takes the rub out, I think, from Mr. Ferentz's argument that the district court applied the wrong legal standard. He's only arguing that he came out wrong in the analysis, which I don't think there's any basis one could say the district court abused its discretion in that regard, and therefore improperly denied the injunction. And that's sort of the end of the story. Well, then you're saying that he didn't consider the 90-degree angle in assessing how an ordinary observer would look at it. Well, it's a little bit of a head you in, tails you lose argument. First, they complained in the brief about him going through the particulars. All he was supposed to do was look at the whole. And the argument, at least as I read it, was sort of penalizing the district court for going through the differences. The district court did make the overall decision, just as the case was. But wait, wait, wait, wait. They are complaining the district court didn't consider the 90-degree offset as an ornamental feature that distinguished this from the prior art. When the district court got to its particular explanation of its overall conclusion, it emphasized the dissimilarities because those are the ones that led it to, that conclusion. It did not list. We list the similarities, which I think were quite obvious, given his description of the facts and the pictures, that, look, you have the vertical hooks. You have the two hooks. You have the 90-degree offset. It's clear that both our product and the plaintiff's product had that 90-degree offset. I don't think he needed to go through. And I don't think the inquiry anyway is you have to list all the positives and all the negatives. That's the counting that they actually argue against. You're not supposed to count specifics. You're supposed to look at the overall impression based on a reasonable observer, and here it was only the judge because of the posture, and make that assessment. And then, obviously, the judge was entitled to explain his reasoning. His conclusion was they were not similar. And so he obviously went and explained how they were not similar. He did not spend pages going through, well, I guess I could say they're similar and let me list the ways, but I don't think he was required to do that. In terms of the irreparable harm, Mr. Farrance mentioned that there's some evidence of confusion in the record, and his statement as to what his client said is in the record, but there's no link whatsoever between that statement, even assuming it's true and specific enough, which I don't think it is, and my client. The only thing that links my client to this case is a printout of their Amazon page. We have nothing in the record that what Ms. Esick was saying was that all of these defendants somehow have hurt me, or at least some of them have, or at least maybe many of them have, or at least I think they have. That's not enough to get when the question is just does there need to be an injunction against my client to establish irreparable harm. The essence of your friend's, at least as I recall it, of your friend's argument on irreparable injury seems to be based on the contention that because the district court didn't deal with the details or some of the details of the declarations, that that was the problem, the essence of the problem. That he ignored evidence. Yes, that is their argument, but I don't think that's true. I think the district court actually looked at it twice, both in his initial decision and then again in reconsideration when the specific argument was made to him, and he went through his reasoning as to how those declarations and the other material they submitted, which was frankly carbon copy stuff that's submitted in hundreds of cases. It's a very generalized bunch of evidence. It did not establish that my client was causing irreparable harm in this case. And by that time, too, you also had our evidence that was where my client's sales were in fact quite minimal. So that's another problem for them. And again, we're talking abuse of discretion. I just want to address for a few minutes, if I can, how this case is or isn't impacted by the court's recent range of motion decision that came out last month, in which Chief Judge Moore dissented. The decision actually affirms all the positions that we've taken in our brief in the Egyptian goddess and Crocs and Ethicon cases, and if that decision stands as decided, it fairly supports our case. Judge Moore wrote a dissent, and I'm sure the case is going to file a motion to rehear, and it is the kind of case, given the nature of her dissent, that might well be reheard. I just want to say that even if that case comes out the way Judge Moore wanted it to come out, it would still not upset the result for us, for the appellee in this case. And that's where the district court's analysis here not jive with the complaints and the dissent in that case? The dissent in that case says you should only look at overall similarity. You should not do that. Basically, and a little bit I'm relying on the characterization that the majority gave the dissent, so we don't really know because it's not fully fleshed out, but perhaps you don't do the functionality. You don't strip away the functional elements. You just look and you just let the jury look at the two products and you let them see if they're substantially similar. I don't think that's right, but that's the most extreme meaning of. My recollection is that the case did not involve an issue about functionality. Am I wrong about that? No, it most certainly did, I believe, yes. So it was a massager, kind of a weird-shaped massaging device, and the majority went through and said, well, this is functional, this is functional, and what's left is different, so it's sustained. Chief Judge Moore said, no, we're getting too particular. We shouldn't be doing this spot the difference. She had those cartoons like you saw when you were a kid. Can you tell the difference between the two pictures? She said the jurisprudence has gone too far into just identifying differences, which would seem to support the appellant's argument in this case, but even under her standard, even if that standard were to become adopted, it wouldn't change the result here in favor of the appellee because her main point actually was that juries should be deciding, if not judges, on summary judgment. Of course, here we had a preliminary injunction decision, so the judge had to take his best shot at the evidence, so that doesn't apply. And the judge did do this overall analysis, and because he didn't take out the 90-degree angle, that outcome still is not an abuse of discretion under Judge Moore's reasoning, I would submit. The other aspect of it is that I don't think that's a workable test anyway because you can't just say, are these things similar? You need some context. You could say, are Mr. Duffley and Mr. Farrant similar? We both have the same job. We're both here on the same day. We both share a lot of demographic characteristics. Some would say, yeah, these are two similar people, but obviously there's many ways that you would say not. You have to say, similar what? And in this case, I think you have to say, are these similar purse hooks, right, or offset purse hooks, depending on whether you take that next step. Once you do that, you have in a way, you need to have some context for the question, and I would submit even under Judge Moore's rationale, you've kind of worked functionality back into the analysis because you are describing what the thing is, what it does, and now you're looking for differences. And, you know, this case is not really different from the old design cases where you had spoons and chairs and lamps, and they were decorated differently, they were styled differently. That's what a design patent is supposed to protect. And here, EASIC's design patent protects the particular shape, the particular style, the flair, the depth. Do these things look the same given their function? And the district court said, no, I think they look different. You're not going to confuse one for the other. And that was not an abuse of discretion. If there are no further questions. Okay. Thank you. Thank you. Mr. Ferrell. I'd like to address a few points of rebuttal. Judge Post, to your question, what did they argue before the district court? If you go back and look at their brief in opposition to the motion for preliminary injunction, their likelihood of success discussion was too paravast and focused on the differences. That's what we think got the district court focused on the differences as opposed to the overall substantial similarity. I also think that the discussion on last month's range of motion decision is a little off target because it doesn't really matter what test you use, the majority or the dissent, as the court indicated in footnote three in range of motion. The district court properly considered both the similarities and differences in assessing the overall similarity of the claim design, where in this case the district court only addressed the differences. While the district court did parrot the correct standard, they didn't apply the correct standard, which is what happened in revision military versus Balboa, where this court reversed the denial of the preliminary injunction. I also think there's no dispute that the district court did not consider the prior art, and the prior art does not show any of the art having the 90 degree offset. And in conclusion, we submit that the court should vacate the district court's denial of the Eastlick's motion for preliminary injunction, and Eastlick requests that the court's decision address both infringement and irreparable harm as the proper infringement analysis impacts the case going forward on remand. Thank you both counsel. The case is submitted.